

BOIES
SCHILLER
FLEXNER

MATTHEW L. SCHWARTZ
Tel.:  (212) 303-3646
E-mail:  mlschwartz@bsfllp.com

July 26, 2017

**BY ELECTRONIC MAIL**

Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**CONFIDENTIAL TREATMENT REQUESTED**

Re:     *United States v. Jason Galanis, et al.*, S1 16 Cr. 371 (RA)

Dear Judge Abrams:

I represent Devon Archer, one of the defendants in the above-referenced case.  I write to request emergency relief in connection with the government's execution of a search warrant on two e-mail accounts associated with my client.  I make this application reluctantly, mindful of the Court's prior decision that challenges to the search warrant should be litigated in the context of a motion to suppress the fruits of the warrant.  But the circumstances surrounding the government's conduct in this case require immediate relief.

In short, the government has seized and produced to all defendants – without any protective order, no less – the entire contents of the accounts, save certain documents that the government has segregated for privilege review.  That is, the government has far exceeded the bounds of the warrant by seizing irrelevant, personal, privileged, and proprietary information that has no arguable relevance to this case and that is plainly, and admittedly, not within the scope of the warrant – and then produced it to all defendants, who are free to make any use of it they please, including publicizing it.[1]  Accordingly, Mr. Archer respectfully requests that the Court issue an order requiring all defendants to return or destroy the government's most recent production.

---

[1]      This letter discusses some of that irrelevant and confidential material, and so therefore Mr. Archer respectfully requests that it be filed under seal.  We have also enclosed a proposed redacted version of this letter, which we believe is appropriate for public filing, with the Court's permission.



## BACKGROUND

On or about December 28, 2016, the government obtained on the basis of a single affidavit search warrants for several e-mail accounts, including two associated with Mr. Archer, pursuant to the Stored Communications Act (collectively, the "Warrant").  Upon reviewing the Warrant, Mr. Archer immediately moved this Court for relief based upon, among other things, the tremendous amount of privileged, confidential, and personal – not to mention irrelevant – information potentially involved.  Ultimately, this Court determined that Mr. Archer's challenge was not ripe, and that he could raise any challenge to the Warrant or the way it was executed in the context of a motion to suppress.  Having raised various challenges to the Warrant prior to its execution, the government conceded and the Court acknowledged, "the risk is on the government." 1/31/2017 Tr. at 18 (order of the Court); *see also id.* at 16 (AUSA stating: "Ultimately, the risk is on the government.").[2]

On June 19, 2017, the government wrote defense counsel, saying that it intended to produce all responsive e-mails to defense counsel "now," other than a sub-set that it had segregated for an as-yet-to-be-completed privilege review.[3]  The government stated that it intended to "make a supplemental production of any emails that are ultimately determined not to be privileged at the completion of the privilege review."

Nearly a month later, on July 12, 2017, the government wrote defense counsel that it had "received the SW results from our vendor today" and so was "beginning the process of loading the materials to hard drives" for counsel.  The government initially misplaced the hard drive that Mr. Archer provided.  However, we finally received it late last week and this week began to review its contents.[4]

---

[2]     Mr. Archer appealed, and the Second Circuit dismissed the appeal without reaching the merits of Mr. Archer's arguments, holding that interlocutory jurisdiction was lacking and that mandamus was not appropriate in light of the suppression remedy.

[3]     The government's privilege review is deeply problematic, and it is highly likely that numerous privileged emails were not segregated for review.  In particular, and contrary to Mr. Archer's request, the government segregated only e-mails that included the proper name or e-mail address of certain lawyers or legal staff identified to the government by Mr. Archer. The government, for example, did not segregate for privilege review documents marked "Attorney Client Privileged," "Attorney Work Product," or other customary markers that denote a potentially privileged communication.  The likelihood that the government has disclosed numerous attorney-client communications compounds the need for the relief requested in this letter.

[4]     Mr. Archer's counsel has not yet had the opportunity to load the data into a review platform where it would be searchable.  The non-responsive documents discussed in this letter therefore come from a manual review of only the first 2,000 pages of documents – of a total of at least approximately 536,500 pages – produced by the government.



Even a cursory review of the materials produced reveals that the government has made absolutely no effort to adhere to the restrictions in the Warrant – a fact the government conceded to counsel in correspondence over the past two days.[5]  The government has seized and produced to co-counsel – without even a protective order to shield private information – thousands upon thousands of pages of irrelevant, privileged, personal, and business confidential information. Among the plainly non-responsive documents seized by the government are:

- An invitation to a seven year old's birthday party at "Bounce U."  *See* Galanis_SW_00000005.

- A video, sent by █████████████████████████████████████████████████████, of ███████████ snowboarding.  *See* Galanis_SW_00001359-60.

- Various privileged communications solely between Mr. Archer and his wife, including on incredibly sensitive topics such as █████████████████████████████. *See, e.g.,* Galanis_SW_00000085 (█████████████████████████████████████████ ██████)

- Contact information for █████████████████████████████████████.  *See* Galanis_SW_00000804 (██████████████████████████████).

- Information about various charities that Mr. Archer worked with or gave money to. *See, e.g.,* Galanis_SW_00000049-50 (██████████████████████████████████ █████████████████████); Galanis_SW_00001228-29 (████████████████████ ████████████████████).

- Confidential business information about various companies, entirely unrelated to the allegations in this case, with which Mr. Archer was involved, including financial

---

[5]    In that correspondence, the government claimed that it "explicitly made [counsel] aware of our intention to proceed in this manner prior to doing so."  Nowhere, however, did the government tell defense counsel that it intended to ignore the restrictions placed upon it by the Warrant.  Presumably, the government is referring to its June 19 e-mail, in which it discussed the ongoing privilege review by a "wall team" and stated that it intended to produce "all of the emails (other than those being reviewed for privilege) to all defendants now.  We will make a supplemental production of any emails that are ultimately determined not to be privileged at the completion of the privilege review."  Read in context, defense counsel understood the government to be proposing to make a staged production of responsive e-mails:  first the ones that were not segregated for review, and later additional e-mails that were determined not to be privileged.  Certainly nothing in the government's June 19 e-mail "explicitly" informed counsel that the government intended to flaunt the Warrant.  And the only other subsequent communication on the topic was on July 12, when the government informed counsel that it had just received "the SW results" and was going to begin loading them on hard drives for production.  The government's reference to "SW results" enforced the commonsense notion that the government would only be seizing and producing that which they were authorized by the Warrant to seize, *i.e.*, the "SW results."



statements and draft regulatory filings. *See, e.g.,* Galanis_SW_00000976-1024 (███████████████████████████████████████████████████████)

- Numerous proposals, including confidential financial information, about utterly irrelevant potential investments. *See, e.g.,* Galanis_SW_00001443-1524 (investment proposal by ████████████████ ████ including draft term sheet, subscription agreement, and numerous documents with a "confidential" watermark); Galanis_SW_00001180-1213 (enclosing ████ ██████████████████ presentation regarding potential co-investment in █████████████████████████, marked "confidential").

- Restaurant recommendations to someone totally uninvolved in this case. *See* Galanis_SW_00001250-51 ("Just want great food. Ambiance does not matter").

These samples come from a review of just the first 2,000 pages of at least approximately 536,500 total pages of material produced by the government as a result of executing the Warrant.

No reasonable person could believe that these documents are responsive to the Warrant, and the government does not claim otherwise. Rather, it is clear and the government has admitted that it made no effort to comply with the Warrant, instead seizing the account data whole-hog and producing it to all of the parties in this litigation. Indeed, in response to counsel's questions about what it had done, the government confirmed that its production "went to all defendants in identical fashion. It consists of all non-priv emails from all five accounts." (A copy of this chain of correspondence is attached as Exhibit A to the Local Rule 16.1 affidavit submitted contemporaneously with this letter).

## RELEVANT LAW

There is compelling authority for the proposition that the government may not review the entire, non-privileged contents of an e-mail account simply because there is probable cause to believe that the account may contain some relevant e-mails. *See, e.g., In the Matter of the Search of Information Associated with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc.*, 13 F. Supp. 3d 145 (D.D.C. April 7, 2014); *In the Matter of Applications for Search Warrants for Information Associated with Target Email Accounts/Skype Accounts*, 2013 WL 4647554 (D. Kan. Aug. 27, 2013). That, however, is an issue that Mr. Archer will litigate in connection with his motion to suppress the fruits of the Warrant. For purposes of this emergency application, Mr. Archer presumes without conceding that the government was permitted to browse, file-by-file, through the e-mails in order to identify the ones that it was authorized to seize by the Warrant. Likewise, there is compelling authority that the government should follow certain pre-determined "minimization" procedures to ensure the proper handling of material that it collects that is not responsive to a warrant. *E.g., In the Matter of the Search of Information Associated with the Facebook Account Identified by the Username Aaron.Alexis that is Stored at Premises Controlled by Facebook, Inc.*, 21 F. Supp. 3d 1, 9-10 (D.D.C. 2013). Again, however, for purposes of this application we assume that no specific procedures are required.



Even so, the Fourth Amendment requires that a warrant describe with particularity the things to be seized, and the government is therefore only permitted to review files "cursorily" in order to assess whether the warrant permits their seizure. *See generally Groh v. Ramirez*, 540 U.S. 551 (2004). The government is not permitted to seize or use files unless they are within the scope of the warrant. *See United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) ("[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items . . . ."). That proposition is true for physical records. *See, e.g., United States v. Mannino*, 635 F.2d 110, 115 (2d Cir. 1980) ("Ample case authority sanctions '*some perusal, generally fairly brief*, of . . . documents (seized during an otherwise valid search) . . . in order for the police to perceive the relevance of the documents to crime.'" (emphasis added; quoting *United States v. Ochs*, 595 F.2d 1247, 1257 n.8 (2d Cir. 1979)); *accord Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976) ("[W]e observe that to the extent [seized] papers were not within the scope of the warrants or were otherwise improperly seized, the State was correct in returning them voluntarily and the trial judge was correct in suppressing others. . . . In searches for papers, it is certain that some innocuous documents will be examined, *at least cursorily*, in order to determine whether they are, in fact, among those papers authorized to be seized. . . . [R]esponsible officials [conducting such searches], including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy." (emphasis added)). And it is equally true for electronic records. *See, e.g., United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009) ("If the warrant is read to allow a search of all computer records without description or limitation it would not meet the Fourth Amendment's particularity requirement.").

## ARGUMENT

The Warrant in this case authorizes a search for and seizure of:

> evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1348, and Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5; conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371; investment advisor fraud, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17; and conspiracy to commit investment adviser fraud, in violation of Title 18, United States Code, Section 371, among other statutes, including the following:
>
> \*        \*        \*
>
> • evidence of crime (*e.g.*, agreement to engage in unlawful conduct, references to or discussion of unlawful conduct), communications constituting crime (*e.g.*, emails containing fraudulent representations) . . . .

While the Warrant is therefore facially defective – because it purports to authorize a search for "evidence of crime" under certain statutes, "among other[s]," *see, e.g., United States v. Bianco*,



998 F.3d 112, 116 (2d Cir. 1993) – it is at least not limitless.  There is no arguable way, for example, that an invitation to a child's birthday party or information about ██████████ ██████████████████████ is relevant to the government's case.  Nonetheless, the government has seized those records and produced them to the other parties in this case.

Although the government has conceded that it bears the risk of executing the Warrant in the face of (among other things) the various concerns raised by Mr. Archer beforehand, that risk has apparently not caused the government to exercise caution.  The government's unapologetic disregard for the language of the Warrant has transformed what was already an overbroad search into a warrantless one rendering any materials collected subject to suppression.  But that is not the subject of the relief that Mr. Archer seeks now; that will be the subject of a motion later.  *See generally United States v. Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (wholesale suppression of the fruits of a search is justified when the agents executing a warrant "effect a 'widespread seizure of items that were not within the scope of the warrant' . . . and . . . do not act in good faith . . . ." (citations omitted)).

Emergency relief is necessary, however, because the government is disseminating the fruits of its general search to co-defendants without any restriction.[6]  This includes both Mr. Archer's personal information, as well as confidential business information of various companies – some of which Mr. Archer is involved with, others of which were potential investments or acquisitions.  In other cases, courts have inferred the government's bad faith where it simply "threatened to provide *all* of the evidence seized and imaged to *each* defendant in the case, without conducting any such review" for responsiveness.  *United States v. Metter*, 860 F. Supp. 2d 205, 216 (E.D.N.Y. 2012) (emphasis in original).  Here, the government did not threaten at all – it simply provided all of the evidence seized to each defendant without taking any steps to ensure the confidentiality of those materials.

Before making this motion, counsel for Mr. Archer raised these concerns with the government and asked the government to confirm whether it had done a responsiveness review.  Assuming it had not, Mr. Archer requested that the government "require the other defendants to return all copies of the documents from the accounts associated with Mr. Archer, to be replaced with only documents that are actually responsive to the warrant."  The government responded by confirming that it had produced non-responsive documents, but that it did not believe that a request to "claw back any non-responsive emails is appropriate."  We are therefore required to ask the Court for the same relief.[7]  Accordingly, Mr. Archer respectfully requests that the Court

---

[6]     Moreover, Mr. Archer has already received a new document request from the Securities and Exchange Commission in the parallel civil enforcement case pending before Judge Pauley, *SEC v. Archer*, 16 Civ. 3505 (WHP), calling for "[a]ll documents produced by the United States Attorney's Office for the Southern District of New York (the "USAO") to You that derived from the search warrant obtained by the USAO on or about December 28, 2016. . . ."  Alone among the defendants in this case and that one, Mr. Archer has not made a blanket assertion of his Fifth Amendment rights and has participated in discovery with the SEC.

[7]     The government did indicate that it had no objection to the entry of a protective order. Mr. Archer therefore requested the government to provide a proposed order acceptable to it in



issue an order requiring all defendants to return or destroy the government's most recent production.[8]

Thank you for your consideration of this request.

Respectfully,

 /s/  Matthew L. Schwartz
Matthew L. Schwartz

cc:      BY ELECTRONIC MAIL

AUSAs Brian Blais, Aimee Hector, Rebecca Mermelstein, and Andrea Griswold

---

the interest of time.  In response, the government sent a proposed order that was totally inappropriate, claiming that a protective order was required because certain discovery material identified "persons who may be subject to intimidation or obstruction, and whose lives, persons and property, as well as the lives, persons and property of loved ones, could be subject to risk of harm absent the protective considerations set forth herein."  (A copy is attached as Exhibit B to the accompanying Local Rule 16.1 affidavit).  This proposed order is totally disingenuous, and frankly misleading to the Court, because the government has no legitimate concerns about obstruction, intimidation, or physical violence in this case.  If the government had such concerns, it would have sought a protective order itself, rather than agreeing to one only after Mr. Archer raised the issue.  Nonetheless, Mr. Archer is hopeful that the government and the other defendants will agree to an appropriate protective order, and Mr. Archer will continue to work in good faith to quickly agree upon one.  Yet even assuming the other defendants are amenable to such an order, that is only a partial solution to the immediate problem.

[8]      Although the Court plainly has the power to fashion any appropriate order governing discovery – which is really all that Mr. Archer requests at this point – the Court may also order the return of the evidence under the Federal Rules of Criminal Procedure.  Under Rule 41(g), any person "aggrieved" by any unlawful seizure "may move for the property's return."  Here, there is no question that – at least to the extent that the government has seized documents that are not responsive to the Warrant – Mr. Archer has been aggrieved by the government's conduct.  Rule 41(g) "contemplate[s] that district judges may order the return of . . . any copies [ ] of seized evidence," *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1174 (9th Cir. 2010) (en banc and per curiam), and the destruction of "copies of records," Fed. R. Crim. P. 41 advisory committee note (1989 amendments) ("In some circumstances . . . equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized.").  *See generally United States v. Ganias*, 824 F.3d 199, 219-220 (2d Cir. 2016) (en banc) (suggesting that motion under Rule 41(g) is the appropriate vehicle to challenge the government's retention of electronic data that is not responsive to a warrant); *see also id.* at 226 (Lohier, *J.*, concurring) ("I also concur insofar as the majority opinion clarifies that under appropriate circumstances it may be helpful for litigants to use the mechanism provided by Rule 41(g) of the Federal Rules of Criminal Procedure when faced with the Government's retention of electronic data.").

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | |
| JASON GALANIS, *et al.,* | No. S1 16 Cr. 371 (RA) |
| Defendants. | |

## DECLARATION OF MATTHEW L. SCHWARTZ

I, Matthew L. Schwartz, pursuant to 28 U.S.C. § 1746, declare as follows

1.       I am a partner with the law firm Boies Schiller Flexner LLP, counsel for Devon Archer.  I make this declaration pursuant to Local Criminal Rule 16.1, and in support of Mr. Archer's emergency application for an order requiring all defendants to return or destroy the government's most recent production, and for a protective order.

2.       Under cover of letter dated July 18, 2017, the government produced to Mr. Archer and at least certain of his co-defendants documents that it described as "E-mails obtained by search warrant (16 Mag 8347) for accounts belonging to Devon Archer, Bevan Cooney, and Sebastian Momtazi."

3.       I receive that production late last week, and my colleagues and I began to review it earlier this week.  We have not yet had an opportunity to load this production onto the review platform that we have been using for this case, and so have only conducted a manual spot-check of these documents produced by the government.

4.       Even that cursory review revealed that the government had produced numerous documents that seemed plainly not to be responsive to any search warrant.  Therefore, I contacted the government yesterday to confirm (a) whether the government had in fact conducted a responsiveness review, and (b) whether the production to Mr. Archer was different than the production to his co-defendants, given that two of the e-mails accounts are associated with Mr. Archer himself.

5.       In a series of back-and-forth e-mails, the government confirmed that it had produced the same material to all defendants, and that the production consisted of "all non-priv emails from all five accounts."  (The government had previously explained that it had not completed its privilege review, and would make a later production of emails that it determined not to be privileged).

1

6.      I explained to the government my concern that it lacked authority to seize documents that are not responsive to the search warrant, but that in any case it was inappropriate for all co-defendants to be given the entire contents of the e-mail accounts, save for documents subject to privilege review.  I explained that the accounts included numerous privileged, confidential, personal, and irrelevant documents that were not responsive to the search warrant.  I therefore asked the government to request that all co-defendants return the production.  I also expressed concern that there was no protective order in place, such that anyone could disseminate this private information without restriction.

7.      In response, the government did not disagree that it had produced non-responsive documents, but instead stated that it did not believe "that a request from the Government to claw back any non-responsive emails is appropriate."  After some back-and-forth, the government advised me that if Mr. Archer wanted anything other than a protective order, we should "raise it with the Court."

8.      The foregoing chain of communications is attached hereto as Exhibit A.

9.      The government did indicate that it would consent to the entry of a protective order.  Earlier today, however, the government proposed a protective order that misleadingly asserted that the need for confidentiality arose solely from concerns about witness tampering, obstruction, intimidation, and physical violence.  A copy of the proposed protective order provided by the government is attached as Exhibit B.

10.      In response, I expressed my view that it was inappropriate to claim that witness safety was a reason for confidentiality.  If the government had any such legitimate concerns, it would have sought a protective order itself long ago, rather than waiting for me to request one. In fact, the reason why a protective order is necessary is because the government erroneously produced hundreds of thousands of pages of confidential business, personal, privileged, and irrelevant documents.  A copy of this correspondence is attached as Exhibit C.

11.      Nonetheless, Mr. Archer will continue to work in good faith with the government on an appropriate protective order.  Even a protective order will not remedy the fact that the other defendants are in possession of the entirety of the e-mail accounts subject to the search warrant, and have been for several days.  Accordingly, it is appropriate for this Court to issue an order requiring all defendants to return or destroy the government's July 18 production.

12.      The relief requested in this emergency application is without prejudice to any motion to suppress the fruits of the government's search warrant, or to any other relief that may be appropriate.  Mr. Archer will make any such motions on the schedule set by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:      July 26, 2017
            New York, New York

                              /s/ Matthew L. Schwartz

2

# Exhibit A

| | |
|---|---|
| **From:** | Mermelstein, Rebecca (USANYS) |
| **To:** | Matthew L. Schwartz |
| **Cc:** | Blais, Brian (USANYS); Griswold, Andrea (USANYS) |
| **Subject:** | RE: US v. Jason Galanis et al, discovery update |
| **Date:** | Wednesday, July 26, 2017 12:06:14 PM |

1. It goes without saying that I vehemently disagree with your characterization that the Government has disregarded the warrant. We will get you a proposed protective order shortly. We believe our method of producing the email SW results was proper and appropriate - if you want a remedy beyond the protective order, please raise it with the Court.

2. I'm not prepared to answer this question. If you have basis for a belief that you are entitled to this information, please let me know.

3. I do not believe you are entitled to this information and we do not intend to provide it.

Best,

Rebecca

-----Original Message-----
From: Matthew L. Schwartz [mailto:mlschwartz@BSFLLP.com]
Sent: Wednesday, July 26, 2017 11:57 AM
To: Mermelstein, Rebecca (USANYS) <RMermelstein@usa.doj.gov>
Cc: Blais, Brian (USANYS) <BBlais@usa.doj.gov>; Griswold, Andrea (USANYS) <AGriswold@usa.doj.gov>
Subject: RE: US v. Jason Galanis et al, discovery update

Rebecca --

1. I do not understand how you can claim that you "explicitly" informed me that you intended to disregard the warrant and instead produce the entirety of the account records, save what is being screened for privilege. Your July 12 e-mail says that you were beginning to load the "SW results" for discovery. And your June 19 e-mail simply says that the government would be producing documents in two batches, one prior to the privilege review and the remainder after. While your June 19 e-mail does use the word "all," any reasonable person would read that to mean all records responsive to the warrant, since the government has absolutely no authority to seize anything else. Certainly nothing was "explicit" about your plans. While I appreciate your offer to enter into a protective order (please propose one acceptable to the government so that we don't lose time), that is hardly a complete remedy for the dissemination of my client's and other people's confidential information.

2. Thank you for the clarification regarding the documents produced by Mr. Dunkerly. Can you confirm that the documents were produced by him recently; e.g., the government has not been holding them since prior to the charges in this case?

3. I disagree with you completely about subpoenas or other compulsory process. Whether or not my client might have standing under the Fourth Amendment, there are other grounds on which he might have a motion based upon the government's use of process. Please produce any and all court orders, subpoenas, warrants, or other process issued in this case. I cannot understand any legitimate reason why the government would be hesitant to produce this material, other than that it might give rise to a motion.

Thanks.

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
212-303-3646 (Direct)
646-337-5787 (Mobile)

-----Original Message-----
From: Mermelstein, Rebecca (USANYS) [mailto:Rebecca.Mermelstein@usdoj.gov]
Sent: Wednesday, July 26, 2017 9:14 AM
To: Matthew L. Schwartz
Cc: Blais, Brian (USANYS); Griswold, Andrea (USANYS)
Subject: RE: US v. Jason Galanis et al, discovery update

Matt,

1. I'm surprised that you are now objecting to our approach to producing the SW results, as we explicitly made you aware of our intention to proceed in this manner prior to doing so and you did not raise any objection. I've attached our previous email on the subject. I don't think that a request from the Government to claw back any non-responsive emails is appropriate, but we would of course consent to the entry of a protective order. Please let me know if you would like to do that.

2. I don't agree with you that your client would have standing to challenge the Government's use of compulsory process served on a third party, but rather than fight about it I can tell you that the documents were voluntarily produced.

Best,

Rebecca

-----Original Message-----
From: Matthew L. Schwartz [mailto:mlschwartz@BSFLLP.com]
Sent: Tuesday, July 25, 2017 7:45 PM
To: Mermelstein, Rebecca (USANYS) <RMermelstein@usa.doj.gov>
Cc: Blais, Brian (USANYS) <BBlais@usa.doj.gov>; Griswold, Andrea (USANYS) <AGriswold@usa.doj.gov>
Subject: RE: US v. Jason Galanis et al, discovery update

1. Yes, that answers my question. My concern is that it appears to me that the government has not done any review of the e-mails to determine what is within the scope of the warrant, and instead simply produced the accounts in their entirety (less whatever has been segregated for privilege review). I do not understand how that is appropriate, but more importantly, it exposes Mr. Archer's confidential business and personal communications, as well as privileged communications, to all of the defendants in this case without restriction. I would ask the government to require the other defendants to return all copies of the documents from the accounts associated with Mr. Archer, to be replaced with only documents that are actually responsive to the warrant. If you have already conducted a review for responsiveness and believe that what you produced is within the scope of the warrant, please let me know that, as well.

2. I don't understand your position. If there is some sort of process pursuant to which the government has obtained these documents, my client is entitled to know under Rule 16 because it could be the basis for a motion. In particular, the timing of the production obviously raises the possibility either that the government has obtained some sort of court order to get this material, or that the government is continuing to issue subpoenas for the production of documents. Either way I believe we are entitled to know.

Please let me know your position on these issues. Thanks.

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
212-303-3646 (Direct)
646-337-5787 (Mobile)

-----Original Message-----
From: Mermelstein, Rebecca (USANYS) [mailto:Rebecca.Mermelstein@usdoj.gov]
Sent: Tuesday, July 25, 2017 7:34 PM
To: Matthew L. Schwartz
Cc: Blais, Brian (USANYS); Griswold, Andrea (USANYS)
Subject: Re: US v. Jason Galanis et al, discovery update

1.  I'm not sure I understand the first question, but the most recent production went to all defendants in identical fashion. It consists of all non-priv emails from all five accounts. Does that answer the question?

2.  With respect to number 2, I'm not prepared to answer.


Sent from my iPhone

On Jul 25, 2017, at 5:52 PM, Matthew L. Schwartz
<mlschwartz@BSFLLP.com<mailto:mlschwartz@BSFLLP.com>> wrote:

Rebecca -

We have now received the hard drive.  Two quick questions as we're getting into it:


1.      To confirm, you produced the same results from the SW to all defendants, correct?  In other words, your most recent production of emails to Mr. Archer is not different than to the other defendants notwithstanding the fact that two of the accounts were associated with him, right?  (I understand that you previously produced to us only the entirety of the account information produced by the service providers).

2.      What is the material produced by Hugh Dunkerley responsive to?  Was there a subpoena or other form of process, or was it voluntary?  And when was the production made - was it recent, or have you had these documents for some time?

Please let me know, or let me know if you'd like to discuss.  Thanks.

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
212-303-3646 (Direct)
646-337-5787 (Mobile)



From: Mermelstein, Rebecca (USANYS) [mailto:Rebecca.Mermelstein@usdoj.gov]
Sent: Wednesday, July 12, 2017 4:33 PM
To: dtouger@aol.com<mailto:dtouger@aol.com>;
mtremonte@shertremonte.com<mailto:mtremonte@shertremonte.com>; Matthew L. Schwartz;
paulanotari@aol.com<mailto:paulanotari@aol.com>;
nbiale@shertremonte.com<mailto:nbiale@shertremonte.com>; hassen@oandh.net<mailto:hassen@oandh.net>;
eugene.ingoglia@allenovery.com<mailto:eugene.ingoglia@allenovery.com>;
gmorvillo@morvillolaw.com<mailto:gmorvillo@morvillolaw.com>
Cc: Blais, Brian (USANYS); Griswold, Andrea (USANYS); Sheinwald, Ellie (USANYS) [Contractor]
Subject: RE: US v. Jason Galanis et al, discovery update

Counsel,

I wanted to provide an update regarding the below.  We received the Morton/Lisa/Clement emails yesterday and received the SW results from our vendor today.  We are thus now beginning the process of loading the materials to hard drives for those that have provided them.

The hard drives should go out sometime next week depending on copying times.

Best,

Rebecca

From: Mermelstein, Rebecca (USANYS)
Sent: Monday, June 19, 2017 11:48 AM
To: 'dtouger@aol.com<mailto:dtouger@aol.com>' <dtouger@aol.com<mailto:dtouger@aol.com>>;
'mtremonte@shertremonte.com<mailto:mtremonte@shertremonte.com>'
<mtremonte@shertremonte.com<mailto:mtremonte@shertremonte.com>>;
'mlschwartz@bsfllp.com<mailto mlschwartz@bsfllp.com>'
<mlschwartz@bsfllp.com<mailto:mlschwartz@bsfllp.com>>; 'paulanotari@aol.com<mailto:paulanotari@aol.com>'
<paulanotari@aol.com<mailto:paulanotari@aol.com>>;
'nbiale@shertremonte.com<mailto:nbiale@shertremonte.com>'
<nbiale@shertremonte.com<mailto:nbiale@shertremonte.com>>; 'hassen@oandh.net<mailto:hassen@oandh.net>'
<hassen@oandh.net<mailto:hassen@oandh.net>>;
'eugene.ingoglia@allenovery.com<mailto:eugene.ingoglia@allenovery.com>'
<eugene.ingoglia@allenovery.com<mailto:eugene.ingoglia@allenovery.com>>;
'gmorvillo@morvillolaw.com<mailto:gmorvillo@morvillolaw.com>'
<gmorvillo@morvillolaw.com<mailto:gmorvillo@morvillolaw.com>>
Cc: Blais, Brian (USANYS) <BBlais@usa.doj.gov<mailto:BBlais@usa.doj.gov>>; Griswold, Andrea (USANYS)
<AGriswold@usa.doj.gov<mailto:AGriswold@usa.doj.gov>>; Sheinwald, Ellie (USANYS) [Contractor]
<ESheinwald@usa.doj.gov<mailto:ESheinwald@usa.doj.gov>>
Subject: US v. Jason Galanis et al, discovery update

Counsel:

We are writing to inform you of three categories of discovery we are preparing for production:

1)      As you know, we obtained a SW on email accounts belonging to Archer, Cooney and Sebastian Momtazi.  We have segregated all potentially privileged emails which are being reviewed by a wall team.  In order not to delay production, we propose to produce all of the emails (other than those being reviewed for privilege) to all defendants now.  We will make a supplemental production of any emails that are ultimately determined not to be privileged at the completion of the privilege review.

2)      We are in the process of obtaining from the Atlantic/Hughes servers emails from the Atlantic/Hughes email accounts of Michelle Morton, Carolyn Lisa and Dina Clement, which we will produce to you.

3)      We have various documents produced to us by Hugh Dunkerley, which we also intend to produce to you.

We will provide you with the size hard drive necessary to receive this discovery shortly.  If you would like to receive this additional discovery, please provide the hard drive to our paralegal, Ellie Sheinwald.  Please clearly mark the hard drive with your name and the name of your client.

Best,

Rebecca

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

# Exhibit B

| | |
|---|---|
| **From:** | Mermelstein, Rebecca (USANYS) |
| **To:** | Matthew L. Schwartz |
| **Cc:** | Griswold, Andrea (USANYS); Blais, Brian (USANYS) |
| **Subject:** | Proposed Protective Order |
| **Date:** | Wednesday, July 26, 2017 1:59:34 PM |
| **Attachments:** | Proposed Protective Order final2.pdf |

Matt –

Please see attached and let us know if we should send to the Court today.

Thanks,

Rebecca

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x
                          :

UNITED STATES OF AMERICA      :     PROTECTIVE ORDER
                          :

       - v. -          :     S1 16 Cr. 371 (RA)
                          :

JASON GALANIS,           :
GARY HIRST             :
JOHN GALANIS,            :
   a/k/a "Yanni,"      :
HUGH DUNKERLEY,         :
MICHELLE MORTON,       :
DEVON ARCHER, and      :
BEVAN COONEY           :
                          :
      Defendants.      :
                          :
- - - - - - - - - - - - - - - - - -x

     WHEREAS, pursuant to requests made by defendants in this matter, the Government has made and will make disclosure to the defendants of documents, objects and information, pursuant to Federal Rule of Criminal Procedure 16, 18 U.S.C. § 3500, and the Government's general obligation to produce exculpatory and impeachment material in criminal cases, all of which will be referred to herein as "disclosure material."  Certain of the Government's disclosure material, referred to herein as "Sensitive Disclosure Material," contains information that identifies, or could lead to the identification of, persons who may be subject to intimidation or obstruction, and whose lives, persons and property, as well as the lives, persons and property of loved ones, could be subject to risk of harm absent the

1

protective considerations set forth herein;

WHEREAS, the Government has made application for the entry of a protective order in order to prevent the harms that might arise from broad disclosure of Sensitive Disclosure Material; and

WHEREAS, the Court finds that entry of a protective order in this case is necessary to prevent the harms that might arise from broad disclosure of Sensitive Disclosure Material, will permit the Government to produce expeditiously the Sensitive Disclosure Material without further litigation and will also afford the defense prompt access to those materials, thereby facilitating the preparation of the defense.

Accordingly, and for good cause shown, IT IS HEREBY ORDERED:

1.    Any Sensitive Disclosure Material produced by the Government in this action shall be Bates-stamped with the designation "Confidential" or otherwise identified by the Government to counsel for the defendants as subject to the provisions of this Order.  The Government's designation of material as Sensitive Disclosure Material will be controlling absent contrary order of the Court.

2.    The results of search warrant 16 Mag 8347, produced to the defendants on or about July 18, 2017 without a "Confidential" designation, contain Sensitive Disclosure Material and are subject to the restrictions concerning Sensitive Disclosure Material set forth in this Order.

2

3.    Sensitive Disclosure Material disclosed to any defendant or to his counsel during the course of proceedings in this action:

(a)  Shall be used by the defendant and his counsel only for purposes of the defense of this action;

(b)  Shall not be duplicated by the defendant except for purposes of the defense of this action;

(c)  Shall be kept and maintained by the defendant in a secure container and location;

(d)  Shall not be disclosed in any form by the defendant or his counsel, including by posting to any Internet site or network site to which persons other than the parties hereto have access or by disclosing to the media or any third party, except as set forth in paragraph 2(e) below; and

(e)  May be disclosed by the defendant or his counsel only to the following persons (hereinafter "Designated Persons"), as needed for purposes of defending this action:

(i)  investigative, secretarial, clerical, and paralegal personnel employed full-time or part-time by the defendant's counsel;

(ii) independent expert witnesses, investigators, or advisors retained by the defendant's counsel in connection with this action;

(iii) other prospective witnesses, and their

3

counsel, to the extent deemed necessary by defense counsel, for trial preparation; and

(iv) such other persons as hereafter may be authorized by the Court upon motion by a defendant.

4.    The defendants and their counsel shall provide a copy of this Order to Designated Persons to whom they disclose Sensitive Disclosure Material pursuant to paragraph 2(e).  Each defendant and/or his counsel shall maintain a record of all such Designated Persons to whom they provide Sensitive Disclosure Material.  If Sensitive Disclosure Material is provided to any prospective witnesses, pursuant to paragraph 2(e)(iii), counsel shall make reasonable efforts to seek the return or destruction of such materials in accordance with paragraph 4 below.  Prior to disclosure of Sensitive Disclosure Material to Designated Persons, pursuant to paragraph 2(e), any such Designated Person shall agree to be subject to the terms of this Order by signing a copy hereof and stating that they "Agree to be bound by the terms herein," and providing such copy to the defendant's counsel.  However, defendants and their counsel need not obtain signatures from any member of the defense team (i.e., attorneys, experts, consultants, paralegals, investigators, support personnel, and secretarial staff involved in the representation of the defendants in this case), all of whom are nonetheless bound by this Protective Order.

5.    Except for Sensitive Disclosure Material that has been

4

made part of the record in this case, the defendants and their counsel shall return to the Government or securely destroy or delete all Sensitive Disclosure Material within 30 days of the expiration of the period for direct appeal from any verdict in the above-captioned case; the period of direct appeal from any order dismissing any of the charges in the above-captioned case; or the granting of any motion made on behalf of the Government dismissing any charges in the above-captioned case, whichever date is later.

6.    The defendants and/or their counsel shall use reasonable care to ensure that the Sensitive Disclosure Material is not disclosed or disseminated to any third parties in violation of this Protective Order.  In the event of an inadvertent disclosure of Sensitive Disclosure Material, the relevant defendant and/or his counsel shall promptly notify the Court and the Government as to the identity of the recipient of the inadvertently produced Sensitive Disclosure Material and shall use reasonable efforts to secure the return or destruction of the inadvertently produced Sensitive Disclosure Material.

7.    The provisions of this Order shall not be construed as preventing the disclosure of any information in any motion, hearing, trial, any appeal therefrom, or sentencing proceeding held in connection with the above-referenced action or to any District Judge or Magistrate Judge of this Court (or their staff) for purposes of the above-referenced action, provided, however, that Sensitive

5

Disclosure Material referenced or included in any written filing should initially be publicly filed in redacted form or under seal, absent consent of the Government or Order of the Court.  All filings should comply with the privacy protection provisions of Fed. R. Crim. P. 49.1.

8.   The provisions of this Order shall not terminate at the conclusion of this criminal prosecution and the Court will retain jurisdiction to enforce this Order following termination of the case.


Dated:     New York, New York
           July ___, 2017


                         SO ORDERED:


                         _____
                         HONORABLE RONNIE ABRAMS
                         UNITED STATES DISTRICT JUDGE
                         SOUTHERN DISTRICT OF NEW YORK

6

# Exhibit C

| | |
|---|---|
| **From:** | Matthew L. Schwartz |
| **To:** | Mermelstein, Rebecca (USANYS) |
| **Cc:** | Griswold, Andrea (USANYS); Blais, Brian (USANYS) |
| **Subject:** | RE: Proposed Protective Order |
| **Date:** | Wednesday, July 26, 2017 6:11:05 PM |

Rebecca —

Thank you for providing this so quickly.  Upon brief review, I have two immediate comments.

1.   This proposed order suggests that the reason why a protective order is necessary is because the disclosure of confidential material would identify "persons who may be subject to intimidation or obstruction, and whose lives, persons and property, as well as the lives, persons and property of loved ones, could be subject to risk of harm absent the protective considerations set forth herein."

    With respect, this is not only inaccurate, but I believe it would be misleading to the Court if it were to be submitted.  The government does not and cannot have any legitimate concerns about witness safety or intimidation stemming from the discovery material, because it produced the material we're talking about — and all of the discovery in this case thus far — without any confidentiality restraints.  In fact, the reason why a protective order is necessary is to protect not the government, but the defendants and innocent third parties whose private information has been obtained and already (in our view) inappropriately disclosed.  This is a perfectly valid reason to seek a protective order, and the reason why we would be seeking one here.  I see no reason to falsely suggest there is some other reason.

2.   To the extent the confidential material belongs to a defendant, he or she should be free to do with it as he wishes.  For example, in para 7, you say that court filings including confidential information should be under seal absent consent of the government or court order.  With respect to Mr. Archer's information, for example, it should be Mr. Archer's consent that is required, not the government's.

Assuming these changes are acceptable to you, let me know whether you would like to turn the document or whether we should.  Thanks.

-mls

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
212-303-3646 (Direct)
646-337-5787 (Mobile)

---

**From:** Mermelstein, Rebecca (USANYS) [mailto:Rebecca.Mermelstein@usdoj.gov]
**Sent:** Wednesday, July 26, 2017 1:59 PM
**To:** Matthew L. Schwartz

**Cc:** Griswold, Andrea (USANYS); Blais, Brian (USANYS)
**Subject:** Proposed Protective Order

Matt —

Please see attached and let us know if we should send to the Court today.

Thanks,

Rebecca